No. 24-5536

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

KNIFE RIGHTS, INC. , *et al*.,
*Plaintiffs-Appellants*,

v.

ROB BONTA, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE
STATE OF CALIFORNIA,
*Defendant-Appellee*.

_____

**On Appeal from the United States District Court
for the District of California**
No. 3:23-cv-00474-JES-DDL
The Honorable James E. Simmons, Jr.

_____

**RESPONSE TO PETITION FOR PANEL REHEARING, REHEARING
EN BANC, OR BOTH**

_____

ROB BONTA
  *Attorney General of California*
THOMAS S. PATTERSON
  *Senior Assistant Attorney General*

R. MATTHEW WISE
CHARLIE SAROSY
*Supervising Deputy Attorneys General*
KATRINA UYEHARA
  *Deputy Attorney General*
STATE OF CALIFORNIA
DEPARTMENT OF JUSTICE
1300 I Street
Sacramento, CA 95814
Telephone: (916) 210-7867
Fax: (916) 324-8835
Katrina.Uyehara@doj.ca.gov
  *Attorneys for Defendant-Appellee*

April 7, 2026

# TABLE OF CONTENTS

**Page**

Introduction ..................................................................................1

Brief Statement of The Case ........................................................3

Reasons to Deny the Petition .......................................................4

    I.      The Panel Opinion Is Consistent with Existing Precedent ........4

         A.    The Panel Opinion Is Consistent with the Supreme Court's Second Amendment Jurisprudence ...................4

         B.    The Panel Opinion Is Consistent with *Rahimi*'s Application of *Salerno* ....................................................9

    II.     The Petition Fails to Present a Question of Exceptional Importance ................................................................15

Conclusion..................................................................................17

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Baird v. Bonta*
163 F.4th 723 (9th Cir. 2026)...........................................................................14

*City of Los Angeles v. Patel, et al.*
576 U.S. 409 (2015) ........................................................................................16

*District of Columbia v. Heller*
554 U.S. 570 (2008) ....................................................................................8, 16

*In re E.R. Fegert Inc.*
887 F.2d 955 (9th Cir. 1989)............................................................................10

*New York State Rifle & Pistol Association, Inc. v. Bruen*
597 U.S. 1 (2022) .....................................................................................*passim*

*United States v. Perez Garcia*
96 F.4th 1166 (9th Cir. 2024)..........................................................................14

*United States v. Rahimi*
602 U.S. 680 (2024) .................................................................................*passim*

*United States v. Salerno*
481 U.S. 739 (1987) .................................................................................*passim*

*United States v. Stennerson*
150 F.4th 1276 (9th Cir. 2025).........................................................................1

*United States v. Vlha*
142 F.4th 1194 (9th Cir. 2025).........................................................................1

*Washington State Grange v. Washington State Republican Party*
522 U.S. 442 (2008) ........................................................................................13

# TABLE OF AUTHORITIES
## (continued)

**Page**

**STATUTES**

United States Code, Title 18
§ 922(g)(8)................................................................10, 11
§ 922(g)(8)(C)(i)........................................................10, 11
§ 922(g)(8)(C)(ii)) .........................................................11

California Penal Code
§ 17235 ..................................................................*passim*
§ 18000 .........................................................................3
§ 18005 .........................................................................3
§ 21510 ..................................................................*passim*
§ 21590 .........................................................................3

**CONSTITUTIONAL PROVISIONS**

United States Constitution
amend. II.................................................................*passim*
amend. VIII.................................................................14

**OTHER AUTHORITIES**

Federal Bail Reform Act...................................................14

## INTRODUCTION

California law regulates a subset of switchblade knives—those with blades two inches in length or longer that can be released automatically—by making it a misdemeanor to carry, possess in a vehicle in public, sell, loan, or transfer such switchblade knives. Cal. Penal Code §§ 17235, 21510. Petitioners bring a facial challenge to these restrictions under the Second Amendment, which the Supreme Court and Ninth Circuit have recognized is "the most difficult challenge to mount successfully." 15-ER-04045 (Dkt. 1, Compl.); *United States v. Rahimi*, 602 U.S. 680, 693 (2024) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)); *see, e.g.*, *United States v. Stennerson*, 150 F.4th 1276, 1281 (9th Cir. 2025); *United States v. Vlha*, 142 F.4th 1194, 1197 (9th Cir. 2025).

Consistent with this precedent, a panel of this Court required Petitioners to show that the challenged "statute violates the Second Amendment in all of its applications." Opn. at 10. Petitioners failed to surmount that bar here because after faithfully conducting the historical analysis set forth in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1, 28-30 (2022), and in *Rahimi*, the panel concluded that prohibiting the concealed carry of switchblades in public places "is relevantly similar to historical concealed carry regulations of Bowie knives, dirks, daggers, slungshots, and other weapons." Opn. at 22. The panel

1

accordingly affirmed the district court's order granting summary judgment to California. *Id*.

Petitioners argue that the panel opinion conflicts with Supreme Court and Ninth Circuit precedent on how to evaluate Second Amendment challenges, but their petition reflects mere disagreement with the panel opinion rather than any conflict with such precedent. Petn. at 7-19.

The petition claims that the panel opinion "merely catalogue[s] historical arms regulations" instead of identifying "the constitutional principles reflected in them." Petn. at 14. But this overlooks that the panel indeed identified the principle—after comparing the "how" and the "why" of the historical analogues against those of the challenged statute—that "states may ban the concealed carry of dangerous edged or impact weapons, such as switchblade knives, which can be used to cause devasting injury or death to a victim." Opn. at 28-30. As the panel opinion noted, Petitioners' own expert seemed to agree with this principle. Opn. at 27, n.12. The petition also asserts that the panel opinion improperly evaluated and rejected its facial challenge by misapplying the *Salerno* standard that *Rahimi* made clear applies to Second Amendment challenges like this one. Petn. 7-10. *See Rahimi*, 602 U.S. at 693. But this argument is merely a disagreement with the Petitioners' burden in a facial challenge. Just as the Supreme Court did in *Rahimi*, the panel opinion rejected the facial challenge by concluding the challenged statute

2

"is constitutional in some of its applications." 602 U.S. at 693. This is not a recharacterization or redefining of the challenged statute, as the petition claims (Petn. at 3), but rather a faithful application of *Salerno* consistent with the Supreme Court's recent application of the standard in *Rahimi*. The petition's claim that there are questions of exceptional importance at issue here fail for the same reasons that no conflict with precedent exists.

There is nothing compelling about the petition's sweeping assertions regarding the panel opinion's self-described "narrow" holding regarding a "a much narrower class of knives than many of the historical analogues in the record." Opn. at 18, 29 n.13. The petition should be denied in its entirety.

## BRIEF STATEMENT OF THE CASE

Petitioners bring a facial challenge to California's longstanding restrictions on a subset of switchblade knives. *See* Cal. Pen. Code §§ 21510, 17235, 21590, 18000, 18005. Originally enacted in 1957, California's restrictions define a "switchblade knife" as "a knife having the appearance of a pocketknife and includes a spring-blade knife, snap-blade knife, gravity knife, or any other similar type of knife, the blade or blades of which are two or more inches in length and which can be release automatically by the flick of a button, pressure on the handle, flip of the wrist or other mechanical device, or is released by the weight of the blade or by any type of mechanism whatsoever." Cal. Pen. Code. § 17235. The

statute also clarifies that the definition "does not include a knife that opens with one hand utilizing thumb pressure applied solely to the blade of the knife or a thumb stud attached to the blade, provided that the knife has a detent or other mechanism that provides resistance that must be overcome on opening the blade, or that biases the blade back toward its closed position." Cal. Pen. Code. § 17235.

California's restrictions are not a "categorical ban" on all switchblade knives, and the knives in question are not merely pocketknives. Petn. at 1. California's restrictions only address the most dangerous of switchblade knives, which have two defining characteristics: blades of two inches or longer and do not have a safety mechanism.

The parties filed cross-motions for summary judgment before the district court in March 2024. The district court granted the Attorney General's motion for summary judgment and denied Petitioners' motion, holding that California's longstanding restrictions do not violate the Second Amendment. 15-ER-00003-00019.

## REASONS TO DENY THE PETITION

### I. THE PANEL OPINION IS CONSISTENT WITH EXISTING PRECEDENT

#### A. The Panel Opinion Is Consistent with the Supreme Court's Second Amendment Jurisprudence

As set forth in *Bruen*, the threshold question for any Second Amendment challenge is whether the Amendment's plain text covers the regulated conduct at

issue.[1]  597 U.S. 1, 17 (2022).  If the regulation burdens conduct implicated by the Second Amendment's plain text, then the burden shifts to the government, which must identify a historical analogue that demonstrates that today's regulation is consistent with our Nation's history and tradition of firearm regulation.  Opn. at 14; *Bruen*, 597 U.S. at 30.  The panel opinion faithfully applied this framework in narrowly holding that "[o]ur Nation's historical tradition supports California's prohibition against the concealed carry of switchblades."  Opn. at 30.

The panel opinion is measured in its application of the Supreme Court's Second Amendment jurisprudence.  The panel "assume[d] without deciding that the plain text of the Second Amendment covers [Petitioners] proposed course of conduct" at the first step of the *Bruen* framework.  Opn. at 19.  At the second step, the panel explained that " California's switchblade regulations are relevantly similar to the [proferred] historical laws with respect to how and why switchblades are regulated."  Opn. at 27.  In doing so, the panel reiterated that a "dead ringer" or "historical twin" are not required and, like *Rahimi*, cautioned "against reading the Second Amendment or *Bruen* so narrowly."  Opn. at 22.  Consistent with *Bruen*, the panel opinion observed that the State need only offer analogues that are

---

[1] Petitioners contend that Respondents conceded that switchblades are bearable "Arms" and that the restrictions regulate conduct covered by the Second Amendment's plain text.  Petn. at 5.  Respondents did not concede these arguments.  *See* ECF 17-1 (Appellees' Answering Brief) at 15-32.

5

"relevantly similar, noting that in the same way that historical regulations of muskets are relevantly similar to modern regulations of handguns, "regulations of Bowie knives are a relevantly similar analogue to California's switchblade regulations." *Id*. at 23.

The panel opinion went on to carefully examine the "common" laws—from states, territories, and cities during the antebellum period and Reconstruction era—that banned the concealed carry of Bowie knives, dirks, and daggers and punished violations with imprisonment or a fine. Opn. at 23-25. Additionally, the panel opinion addressed how "[m]any states" banned the concealed carry of flexible impact weapons (e.g., slungshots) and of "impact weapons commonly carried by law enforcement (e.g., sandbags, blackjacks, billy clubs). Opn. at 27-28. Consistent with *Bruen*, the panel then looked at *how* and *why* jurisdictions prohibited the concealed carry of Bowie knives and other knives. *Id*. at 27-29. In addressing the "how," the panel observed that "[l]ike the dozens of historical regulations described, California bans the concealed carry of switchblade knives, and violation of its regulations is a misdemeanor." *Id*. at 29. Turning to the "why," the panel relied on historical experts that seemed to agree that states responded to increasing knife-related violence with the regulation of such knives. *Id*. at 27; *see also id*. at 27 n.12. The panel explained that Bowie knives were fighting knives intended for interpersonal combat, and as rates of violence rose in

6

the nineteenth century, people were more likely to carry and use large knives, which exacerbated rates of violence. Opn. at 27. The panel ultimately concluded that state legislatures banned the concealed carry of Bowie knives and other weapons because of their common association with and use in criminal activity. *Id*. at 28. In short, "the purpose for which California's switchblade regulations were adopted—to address concerns about threats to public safety caused by the use of switchblades in criminal activity—closely mirrors the purposes for which antebellum and post-Civil war legislatures adopted similar regulations on Bowie knives, dirks, daggers, clubs, slungshots, and other weapons." *Id*. at 30.

Moreover, even if this Court chooses to address the other actions in California Penal Code section 21510, the historical analogues and underlying principles that the panel identified equally support those actions. The Attorney General's briefing was not limited to defending section 2150's concealed carry prohibition, and the historical record also supports the sale, loan, transfer, and possession of switchblade knives in a vehicle in public. *See, e.g.*, C.A. Dkt. 17 at 37-49. *Rahimi* instructs that modern laws must comport with the principles underlying the Second Amendment and our regulatory tradition. *Rahimi*, 602 U.S. at 692. The underlying principles supporting the concealed carry restriction are the same as those that support the sale, loan, transfer, and possession of switchblade knives in a vehicle in public. Throughout our Nation's history, there is a robust regulatory

7

tradition of restricting dangerous and deadly impact weapons that are closely associated with crime, including by imposing open and concealed carry prohibitions, and prohibiting or taxing their sale. *See, e.g.*, C.A. Dkt. 17 at 35. Here, "California targeted switchblades specifically because of the particular danger these weapons present, and their common association with criminality." Opn. at 29. Each additional action in California Penal Code section 21510 comports with the underlying principles identified by the panel opinion.

Petitioners argue that the panel "merely catalogue[d] historical arms regulations" without identifying the "constitutional principles reflected in them." Petn. at 14. But they fail to identify any specific flaws in the Court's historical analysis under *Bruen*, including the Court's determination that the historical restrictions on Bowie knives and other weapons are relevantly similar to the State's restrictions on switchblades. Instead, they insist that "the panel applied the wrong constitutional framework," Petn. at 12, because in their view *District of Columbia v. Heller*, 554 U.S. 570 (2008), identified the *sole* relevant historical tradition: that only weapons that are "dangerous and unusual" can be restricted, which they allege is the same as whether a weapon is "in common use." Petn. at 11-12. But this novel interpretation of *Heller* is inconsistent with *Heller* itself and with subsequent Supreme Court precedent. *Heller*, 554 U.S. at 626 (the Second Amendment right is "not a right to keep and carry any weapon whatsoever"); *Bruen*, 597 U.S. at 21

8

(reiterating this quote); *id.* at 27 ("[T]he regulatory challenges posed by [weapons] today are not always the same as those that preoccupied the Founders . . . or the Reconstruction generation. . . . [Thus,] the Constitution can, and must, apply to circumstances beyond those the Founders specifically anticipated."); *id.* at 2157 (Alito, J., concurring) (*Bruen* did not "decide anything about the kinds of weapons that people may possess."); *Rahimi*, 602 U.S. at 737 (Barrett, J., concurring) ("[T]he Second Amendment is not absolute").

While the petition might disagree with the panel "explicitly declin[ing]" to address how the phrases "common use" and "dangerous and unusual" apply in the *Bruen* framework, Opn. at 18, such disagreement is not a serious criticism of the panel opinion's thorough historical analysis that faithfully follows *Bruen* and *Rahimi*. The petition simply fails to show how the panel opinion's historical analysis in any way conflicts with the Supreme Court's or Ninth Circuit's Second Amendment jurisprudence.

## B. The Panel Opinion Is Consistent with *Rahimi*'s Application of *Salerno*

As the panel opinion noted, to succeed in their facial challenge, Petitioners "must prove that the statute violates the Second Amendment in all of its applications." Opn. at 10. In other words, as the panel opinion explained, Petitioners "must show that there exists 'no set of circumstances' in which California's switchblade regulations can be applied without violating the Second

9

Amendment." Opn. at 10-11. Petitioners argue that the panel erred by "using *Salerno* as a threshold bar before the *Heller/Bruen* analysis is conducted," and by rejecting the facial challenge without addressing all of the categories of conduct described California Penal Code section 21510.[2] Petn. at 1-2, 8-9, 16-18. This contention misunderstands how the Supreme Court applied *Salerno* in *Rahimi* and mischaracterizes how the panel opinion applied *Salerno* consistent with *Rahimi*.

*Rahimi* concerned a facial challenge to section 922(g)(8) of title 18 in the United States Code, which "prohibits an individual subject to a domestic violence restraining order from possessing a firearm if that order includes a finding that he 'represents a credible threat to the physical safety of [an] intimate partner,' or a child of the partner or individual." *Rahimi*, 602 U.S. at 684-85. A restraining order must meet three criteria under section 922(g)(8) to substantiate a prohibition. *Id.* at 688-89. The third criterion can be satisfied in two different ways; specifically, the order can include a finding that the restrained person represents "a credible threat to the physical safety" of the protected person (18 U.S.C. § 922(g)(8)(C)(i)), or the order can "explicitly prohibit[] the use, attempted use, or

---

[2] Petitioners argue that Respondent waived any argument related to whether this Court could apply a facial challenge standard. Petn. at 23-24. However, Respondent raised this argument in the motion for summary judgment briefing before the district court (15-ER-032673), and thus, the issue was raised sufficiently for the trial court to rule on it, and it may be considered by this Court. *See In re E.R. Fegert Inc.*, 887 F.2d 955, 957 (9th Cir. 1989).

threatened use of physical force" against the protected person" (*id.* at § 922(g)(8)(C)(ii)).  When evaluating the facial challenge to section 922(g)(8), the Supreme Court noted these "two independent bases for liability" under section 922(g)(8)(C)(i) and 922(g)(8)(C)(ii).  *Rahimi*, 602 U.S. at 693.  Yet, the Supreme Court made clear that its "analysis starts and stops with Section 922(g)(C)(i) because the Government offers ample evidence that the Second Amendment permits the disarmament of individuals who pose a credible threat to the physical safety of others."  *Id.*  The Court explicitly noted that it "need not decide whether regulation under Section 922(g)(8)(C)(ii) is also permissible."  *Id.*  The Court went on to conduct *Bruen*'s historical analysis in relation to section 922(g)(8)(C)(i) and had "no trouble" in rejecting the facial challenge.  *Id.* at 693-700.

In other words, *Rahimi* concerned a facial challenge to a law that had multiple, independent bases for liability, and the Supreme Court rejected that facial challenge by focusing on one basis for liability and identifying a "tradition of firearm regulation" that supported that one basis for liability.  602 U.S. at 700; *see also id.* at 708 (Gorsuch, J., concurring) ("[I]n this facial challenge, the question becomes whether that law, in at least some of its applications, is consistent with historic firearm regulations .."); *id.* at 711 (Gorsuch, J., concurring) ("[I]n at least some applications, the challenged law does not diminish any aspect of the right the Second Amendment was originally understood to protect.").

11

The panel opinion took the same approach here, consistent with *Rahimi*. *See* Opn. at 16 (noting that in *Rahimi*, the Supreme Court "held that the constitutionality of just one of those sources [of liability] was sufficient for the statute to survive a facial challenge). As the panel opinion notes, California Penal Code section 21510 prohibits carrying a switchblade knife; possessing a switchblade knife in a vehicle in public; and selling, loaning, or transferring a switchblade knife. Opn. at 9. There are thus multiple, independent bases for liability that are punishable as a misdemeanor. Opn. at 9. Like in *Rahimi*, the panel opinion applied the *Bruen* analysis to one of those bases for liability and rejected the facial challenge after concluding that the "restriction is supported by our Nation's history and tradition of arms regulations." Opn. at 19. Accordingly, consistent with *Rahimi*, the panel opinion declined to address whether the other bases for liability in California Penal Code section 21510 are constitutional. Opn. at 19, n.4.

This approach is not a "recharacterize[ation] of a unitary criminal prohibition," as the petition asserts. Petn. at 3. Here, "[t]he parties agree" that the law at issue "prohibits the concealed carrying of switchblade knives in public." Opn. at 19. Petitioners were thus required to "show that there exists 'no set of circumstances' in which California's switchblade regulations can be applied without violating the Second Amendment." *Id*. at 10-11. Because the State met its

12

burden at *Bruen*'s second step—by showing that historical concealed carry restrictions were relevantly similar to the switchblade restrictions' concealed carry provision—Petitioners failed to surmount the difficult burden the Supreme Court requires for facial challenges, as demonstrated by *Rahimi*'s application of *Salerno*. The panel opinion did not "redefin[e] the statute" or fail to "resolve the facial challenge presented." Petn. at 3. Rather, the panel opinion avoids the error made by the Fifth Circuit in *Rahimi*, as noted by the Supreme Court when it explained that the Fifth Circuit "did not correctly apply our precedents governing facial challenges." *Rahimi*, 602 U.S. at 701.

The panel's application of *Salerno* is consistent not only with *Rahimi*, but also with the Supreme Court's broader approach to facial challenges. The Court has explained that facial challenges are "disfavored" for several reasons: they "often rest on speculation" and "run contrary to the fundamental principle of judicial restraint that courts should neither 'anticipate a question of constitutional law in advance of the necessity of deciding it' nor 'formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.'" *Washington State Grange v. Washington State Republican Party*, 522 U.S. 442, 450-451 (2008). They also "threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution." *Id.* (internal quotation omitted).

Petitioners also assert that this Court, in *United States v. Perez Garcia*, 96 F.4th 1166 (9th Cir. 2024), "squarely rejected the argument that *Salerno* displaced *Bruen* in Second Amendment cases." Petn. at 16. There, this Court encountered a Second Amendment challenge to the same statute challenged before the Supreme Court in *Salerno*: the federal Bail Reform Act. In *Perez-Garcia*, the government argued that the Bail Reform Act's restriction on the appellant's firearm possession was justified by the same regulatory interest identified in *Salerno* and tried to sidestep the entire Second Amendment analysis. *Perez-Garcia*, 96 F.4th at 1175. This Court held that the Supreme Court's Eighth Amendment due process analysis in *Salerno* could not be substituted for a Second Amendment analysis under *Bruen*. *Id*. at 1176-1177. But *Perez-Garcia*, which involved two as-applied Second Amendment challenges, said nothing about how to treat facial challenges generally, much less those brought under the Second Amendment. Accordingly, the panel's methodology here does not conflict with this Court's decision in *Perez-Garcia*.[3]

---

[3] Petitioners also suggest, Petn. at 16-17, that the panel's application of *Salerno* conflicts with *Baird v. Bonta*, 163 F.4th 723 (9th Cir. 2026), but that case is currently awaiting a response to the parties' separate requests for rehearing en banc. In any event, the panel in *Baird* explained that its "analysis and conclusion would be the same" "regardless of whether Baird has a facial challenge, an as-applied challenge, or both." *Id.* at 745.

In any event, the other statutory prohibitions—against possession in a vehicle in public, selling, loaning, or transferring covered switchblade knives, Cal. Penal Code §§ 17235, 21510—are also consistent with the historical principle that governments may restrict certain dangerous knives. *See supra* at pp. 6-9. Thus, not only are petitioners unable to show that the concealed carry restrictions are unconstitutional, but they cannot demonstrate that any of the conduct regulated by California's challenged switchblade knife law is not amenable to state regulation. Because each of the multiple, independent bases for liability are all consistent with the Second Amendment, petitioners' arguments in support of en banc review are meritless.

## II. THE PETITION FAILS TO PRESENT A QUESTION OF EXCEPTIONAL IMPORTANCE

Petitioners argue that their petition raises two questions of "exceptional importance"—but both essentially repackage the merits arguments addressed above, specifically "whether and how *Salerno*'s facial-challenge formulation operates within the Second Amendment's historical tradition analysis." Petn. at 20.

Petitioners argue that "[t]his case presents exceptionally important and recurring questions concerning the interaction between *Salerno* and the Second Amendment framework." Petn. at 20. They argue that "[s]ince *Bruen*, courts have grappled with whether and how *Salerno*'s facial-challenge formulation operates

15

within the Second Amendment's historical-tradition analysis." *Id.* But as discussed above (*see infra* Section I.B.), the petition fails to acknowledge *Rahimi*'s clear guidance on, and application of, *Salerno* in a facial Second Amendment challenge—effectively answering these questions.[4]

Petitioners also assert that the panel opinion "raises concerns well beyond the Second Amendment" because it purportedly "authorizes courts to rewrite and fragment unified criminal statutes and uphold them based on judicially narrowed formulations untethered to the statutory text." Petn. at 21. This argument fails for the reasons explained previously in Section I.B. It is not in fact what the panel opinion did. Rather, Petitioners chose to facially challenge the entirety of California Penal Code section 21510 and the multiple bases for liability within the statute. Opn. at 5. Just as the Supreme Court rejected the facial challenge to a federal statute by conducting the *Bruen* analysis for one of "two independent bases for liability" in *Rahimi*, the panel opinion rejected the facial challenge to California Penal Code section 21510 by conducting the *Bruen* analysis for one of the bases of liability in that statute. *Compare Rahimi*, 602 U.S. at 693-700 *with* Opn. at 16-30. This approach is not a concern, but rather a faithful application of *Salerno* pursuant

---

[4] And, even prior to *Rahimi*, the Supreme Court noted that the *Salerno* standard for facial challenges applies to the Second Amendment. *See City of Los Angeles v. Patel, et al.*, 576 U.S. 409, 415 (2015) (explaining that the Court has allowed facial challenges under many constitutional provisions, including the Second Amendment in *Heller*).

16

to the Supreme Court's guidance in *Rahimi*. The petition's argument to the contrary is essentially an attempt to circumvent *Salerno* and should be accordingly rejected.

## CONCLUSION

The Respondent respectfully requests that this Court deny the petition in its entirety.

Dated: April 7, 2026

Respectfully submitted,

*s/ Katrina Uyehara*

ROB BONTA
  *Attorney General of California*
THOMAS S. PATTERSON
  *Senior Assistant Attorney General*
R. MATTHEW WISE
CHARLIE SAROSY
  *Supervising Deputy Attorneys General*
KATRINA UYEHARA
  *Deputy Attorney General*

17

## STATEMENT OF RELATED CASES

The Attorney General is not aware of any related cases, as defined by Ninth Circuit Rule 28-2.6, that are currently pending in this Court and are not already consolidated here.

Dated:  April 7, 2026                    Respectfully submitted,

                              _s/ Katrina Uyehara_


                              ROB BONTA
                                *Attorney General of California*
                              THOMAS S. PATTERSON
                                *Senior Assistant Attorney General*
                              R. MATTHEW WISE
                              CHARLIE SAROSY
                                *Supervising Deputy Attorneys General*
                              KATRINA UYEHARA
                                *Deputy Attorney General*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 11. Certificate of Compliance for Petitions for Rehearing/Responses

*Instructions for this form:* *https://www.ca9.uscourts.gov/forms/form11instructions.pdf*

**9th Cir. Case Number(s)** 24-5536

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 40-1, the attached petition for panel rehearing/petition for rehearing en banc/response to petition is *(select one)*:

⦿ Prepared in a format, typeface, and type style that complies with Fed. R. App. P. 32(a)(4)-(6) and **contains the following number of words:** 3,818 .
*(Petitions and responses must not exceed 4,200 words)*

**OR**

◯ In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** s/Katrina Uyehara    **Date** 4-7-2026
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 11**                                                      *Rev. 12/01/24*

# CERTIFICATE OF SERVICE

Case Name:    ***Knife Rights, Inc., et al. v. Bonta***      Case No.    **24-5536**

I hereby certify that on <u>April 7, 2026,</u> I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

➢ **RESPONSE TO PETITION FOR PANEL REHEARING, REHEARING EN BANC, OR BOTH**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>April 7, 2026,</u> at Sacramento, California.

Bryn Barton
Declarant

Signature

SA2024304125
39760187